Kevin NOVAK, Plaintiff–Appellee
and Cross–Appellant,

v.

Julie CRAVEN, Defendant–Appellant,

and

Margaret Cawthra, Defendant–
Cross–Appellee.

No. 06CA1041.

Colorado Court of Appeals,
Div. VI.

Feb. 21, 2008.

As Modified on Denial of Rehearing
May 29, 2008.

Certiorari Denied Dec. 2, 2008.

Buchanan, Jurdem & Cederberg, P.C., Ross B.H. Buchanan, Denver, Colorado, for Plaintiff–Appellee and Cross–Appellant.

Wick & Trautwein, L.L.C., Kent N. Campbell, Kimberly B. Schutt, Fort Collins, Colorado, for Defendant–Appellant.

Messner & Reeves, L.L.C., James R. Everson, Jennifer L. Seda, Denver, Colorado, for Defendant–Cross–Appellee.

Levy, Morse & Wheeler, P.C., Karen H. Wheeler, Joshua O. Gregory, Englewood, Colorado, for Amicus Curiae Colorado Defense Lawyers Association.

Opinion by Judge DAILEY.

Defendant, Julie Craven, appeals the trial court's order denying her costs and awarding them, instead, to plaintiff, Kevin Novak. Novak, in turn, cross-appeals that part of the judgment entered by the trial court in favor of another defendant, Margaret Cawthra. We affirm in part, reverse in part, and remand with directions.

Novak was seriously injured in the City of Lakewood when (1) Cawthra's horse, which she had on a lead, spooked, ran into the street, and collided with his car; and (2) Craven rear-ended Novak's car with her own car.

Novak initiated the present suit, asserting claims of negligence against Cawthra, Craven, and a third defendant (Rea) associated with Cawthra. At trial, the court refused to instruct the jury, as requested by Novak, that Cawthra was negligent per se if she permitted her horse to run at large in violation of a Lakewood municipal ordinance.

The jury returned a verdict absolving Cawthra and Rea of any liability to Novak. It also, however, returned a verdict finding for Novak against Craven, in an amount which, when offset against insurance benefits Novak had received, resulted in a $10,000 judgment for Novak.

Subsequently, Craven asserted that she was entitled to costs under section 13–17–202, C.R.S.2007, the offer of settlement statute. The trial court rejected this assertion and awarded Novak, as the prevailing party, $21,332.95 in costs.

Craven now appeals the trial court's costs rulings, and Novak cross-appeals the trial court's failure to provide the jury with a negligence per se instruction.

### I. Failure to Instruct on Negligence Per Se

■ We first consider the issue raised by Novak's cross-appeal, that is, whether the trial court erred in failing to instruct the jury that Cawthra was negligent per se (and thus liable to him in damages) if she permitted her horse to run at large in violation of a

Lakewood municipal ordinance. We perceive no error in the trial court's instructions.

The Lakewood ordinance provides:

It shall be unlawful for the owner of any dog or other animal, excepting cats, to permit the same to run at large within the city. As used herein, animal means any animal brought into domestic use so as to live and breed in a tame condition, including, but not limited to, dogs, other household pets, horses, livestock, and animals generally regarded as farm or ranch animals.

Lakewood Mun.Code § 6.03.010A.

The Lakewood ordinance also defines "[r]unning at large," in pertinent part, to mean "off the premises of the owner and not under the effective control of that owner ... by means of a leash, cord, or chain." Lakewood Mun.Code § 6.01.010.

The trial court instructed the jury with respect to both parts of the ordinance. Novak requested that the trial court additionally instruct the jury as follows:

A violation of [this] ordinance constitutes negligence.

If you find such a violation, you may only consider it if you also find that it was a cause of the claimed injuries, damages or losses.

The trial court rejected Novak's request and instead charged the jury:

A violation of this ordinance constitutes negligence *if the owner, in permitting the animal to run at large, did not act as a reasonable person would act under [the] same or similar circumstances.*

(Emphasis added.)

On appeal, Novak contends that, under Colorado law, he was entitled to a negligence per se instruction, and that the trial court erred in requiring the jury to find not only a violation of the ordinance but also common law negligence before finding Cawthra liable. We are not persuaded.

In *Largo Corp. v. Crespin,* 727 P.2d 1098 (Colo.1986), the supreme court stated:

Negligence per se serves to establish the existence of the defendant's breach of a legally cognizable duty owed to the plain-

tiff. The standard of conduct is adopted by the court from the statute or ordinance, and violation of the enactment conclusively establishes negligence.

*Id.* at 1107 (citation omitted); *see also Fishman v. Kotts,* 179 P.3d 232, 234 (Colo.App. 2007)(negligence per se is shown when (1) the defendant violates a statute or ordinance adopted for the public's safety, (2) the violation proximately causes the plaintiff's injury, and (3) the plaintiff is a member of the class which the statute or ordinance was intended to protect and the plaintiff's injuries are of the type it was enacted to prevent).

The issue here is whether the ordinance contemplates the imposition of liability on a negligence per se, or common law negligence, basis.

On three occasions, other divisions of this court have interpreted ordinances similar to the one in this case. In *Fishman,* the ordinance provided, "It is unlawful for the owner ... of any dog to allow, suffer, permit or sanction the running at-large of said dog without the accompaniment of said owner," 179 P.3d at 234; in *Downing v. Lillibridge,* 39 Colo.App. 231, 233, 566 P.2d 714, 716 (1977), the ordinance provided, "It shall be unlawful for any owner ... of any dog to allow such dog to run at large in the City unless such dog is under the reasonable control of such owner"; and in *Lui v. Barnhart,* 987 P.2d 942, 944 (Colo.App.1999), the ordinance provided, "No person owning or keeping any animal, other than an ordinary domesticated house cat, shall fail to keep said animal on the premises of the owner or keeper unless the animal is ... [o]n a leash, cord or chain held by a person who is physically able to control the animal...."

In both *Fishman* and *Downing,* the divisions concluded that civil liability could not be imposed on a dog's owner without first proving that the owner was negligent in allowing the dog to run at large. In reaching their decisions, the divisions relied on two considerations: (1) the particular language of the ordinance (that is, either "allow" or "allow, suffer, [or] permit" dogs to be at large) and (2) the existence of an exception for dogs under the owner's control. *See Fishman,*

179 P.3d at 234–35; *Downing,* 39 Colo.App. at 233, 566 P.2d at 716.

In contrast, the division in *Lui* concluded that a claim based on an alleged violation of the ordinance was properly characterized as a negligence per se claim, despite the existence of an exception for animals under the owner's control.

The difference between the results reached in *Fishman* and *Downing,* on the one hand, and *Lui,* on the other, lies in the difference in language used in the ordinances. As noted by the division in *Fishman,* the use of the word "allow" (or its synonym, "permit") is commonly understood to imply some type of volition and consequently, to require some proof of intent, knowledge, or negligence on the part of the actor. *See Fishman,* 179 P.3d at 235 (citing *Alvarez v. Ketchikan Gateway Borough,* 91 P.3d 289, 292 (Alaska Ct.App. 2004); and *Santanello v. Cooper,* 106 Ariz. 262, 475 P.2d 246, 249–50 (1970)). The ordinance in *Lui* did not contain either of these words; instead, it was phrased in terms of absolute prohibition ("[n]o person ... shall fail to ... ").

Here, Lakewood Municipal Code section 6.03.010A did not contain terms of absolute prohibition, but, instead, used the term "permit," which, as indicated above, ordinarily connotes a volitional act of a type requiring proof of at least negligence to establish liability. Consequently, we conclude that the trial court did not err in construing this provision to allow liability only upon proof of common law negligence by Cawthra. *See Fishman,* 179 P.3d at 234–35; *Downing,* 39 Colo.App. at 233, 566 P.2d at 716.

In reaching this conclusion, we reject Novak's reliance on a separate provision of the Lakewood Municipal Code, section 6.08.010, which, according to him, evidences the intent of the Lakewood City Council to make a violation of section 6.03.010A a strict liability criminal offense, thus allowing for the imposition of civil liability on a negligence per se basis. *See Lui,* 987 P.2d at 945–46.

Novak did not cite, present, or otherwise argue the impact of section 6.08.010 either to the trial court or to us in his opening brief. He raised the purported effect of section 6.08.010 for the first time in his reply brief. At oral argument, Cawthra asserted that Novak had waived consideration of section 6.08.010 by not presenting it to the trial court.

■ A party's reliance on a municipal ordinance invokes not only legal issues, but evidentiary ones as well. In this regard, we note that, under current Colorado law, as a court of general jurisdiction, the trial court could not take judicial notice of the contents of a municipal ordinance; it was incumbent upon Novak to introduce into evidence a copy of section 6.08.010. *Concrete Contractors, Inc. v. City of Arvada,* 621 P.2d 320, 321 n. 1 (Colo.1981); *see also* §§ 31–16–103, 31–16–208, C.R.S.2007 (prescribing the methods by which the contents of a municipal ordinance may be proved to a court of general jurisdiction).

■ The supreme court "has traditionally recognized that the General Assembly has great latitude in enacting legislation that affects the admissibility of evidence." *People v. Deitchman,* 695 P.2d 1146, 1157 (Colo. 1985). And, where, as here, "a statute provides the method of proof of an ordinance to make it admissible as evidence, that method must be strictly followed." *Farrior v. Payton,* 562 P.2d 779, 789 (Haw.1977) (quoting *Territory v. Yoshikawa,* 41 Haw. 45, 47 (1955)).

■ Assuming, arguendo, judicial notice could be taken of municipal ordinances, Novak would nonetheless not be entitled to relief. Even where judicial notice is appropriate, a trial court is not expected to be omniscient: the party must provide the trial court with at least some notice of the existence of the municipal provision. *See, e.g.,* 1 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 201.52[3][d], at 201–96 (Joseph M. McLaughlin ed., 2d ed. 2008) ("The current view is to permit the court to judicially notice facts concerning municipal ordinances *if the requesting party provides the appropriate information.*" (emphasis added) ); 1 Clifford S. Fishman, *Jones on Evidence, Civil and Criminal* § 2:85, at 174 (7th ed. 1992) ("The better, and by now the prevailing rule, is to permit a court to

take judicial notice of such matters, and require judicial notice *when the offering party provides the court with the necessary information.*" (emphasis added) ); 2 Kenneth S. Broun, *McCormick on Evidence* § 335, at 459 n.2 (6th ed. 2006) ("A judge, of course, may undertake an independent investigation of the applicable law, but *ordinarily judges rely on opposing counsel to bring to their attention the appropriate sources of law.*" (emphasis added) ); see also *Getty Petroleum Mktg., Inc. v. Capital Terminal Co.*, 391 F.3d 312, 333–34 (1st Cir. 2004) (Lipez, J., concurring) ("*Parties generally must identify the law that is essential to their case. . . .* [T]he relevant law must be provided to the court in a meaningful form. Where this law can be readily retrieved from a single citation, providing that citation to the court will usually suffice." (emphasis added) ).

■ "[T]o preserve a claim for review on appeal, the party claiming error must have supplied the right ground for the request. The basis of this requirement is obvious: the judge must largely rely upon the parties to research and raise issues, and giving the judge the wrong reason for a request is usually equivalent to giving the judge no reason at all." *Danco, Inc. v. Wal-Mart Stores, Inc.*, 178 F.3d 8, 15 (1st Cir. 1999).

In the trial court, Novak argued that the language of section 6.03.010A, in and of itself, sufficed to impose liability on a negligence per se basis; he did not argue, as he does here, that the strict liability provisions of a wholly different section—section 6.08.010—dictated that result.

Because Novak did not bring Lakewood Municipal Code section 6.08.010 to the trial court's attention, we will not now consider it as grounds to reverse the trial court's judgment. *See Flores v. Am. Pharm. Servs., Inc.*, 994 P.2d 455, 458 (Colo.App.1999) ("An appellate court will not consider issues, arguments, or theories not previously presented in trial proceedings."); *cf. Estate of Stevenson v. Hollywood Bar & Cafe, Inc.*, 832 P.2d 718, 721 n.5 (Colo.1992) (declining to address effect of statute which appellant did not rely on before, or argue to, the trial court).

## II. Costs Rulings

In her appeal, Craven contends that the trial court erred in applying section 13–17–202. We agree.

### A. Section 13–17–202, As It Existed at the Time of Trial

■ At the time of trial, section 13–17–202(1)(a)(II), C.R.S.2007, provided:

If the defendant serves an offer of settlement in writing at any time more than fourteen days before the commencement of the trial that is rejected by the plaintiff, and the plaintiff does not recover a final judgment in excess of the amount offered, then the defendant shall be awarded actual costs accruing after the offer of settlement to be paid by the plaintiff.

Section 13–17–202(2), C.R.S.2007, provides: When comparing the amount of any offer of settlement to the amount of a final judgment actually awarded, any amount of the final judgment representing interest subsequent to the date of the offer in settlement shall not be considered.

As pertinent here, Craven timely extended the following offer to Novak:

Defendant Julie Craven, by and through her attorneys, WICK BRAMER UKASICK & TRAUTWEIN, LLC, and pursuant to C.R.S. § 13–17–202, makes an offer of settlement to Plaintiff Kevin Novak for the sum of $25,000.

Novak rejected the offer.

The jury returned verdicts which, as mentioned earlier, resulted in the entry of a $10,000 judgment for Novak against Craven.

Subsequently, both Craven and Novak claimed to be entitled to costs under section 13–17–202. Relying primarily on *Roberts v. Swain*, 353 N.C. 246, 538 S.E.2d 566 (2000), the trial court calculated the amount of Novak's "final judgment," for section 13–17–202 purposes, as including not only the $10,000 from the jury verdicts but also Novak's costs ($21,332.95) and pre-offer, prejudgment interest ($2,970.20).

Because the resultant figure ($34,303.15) exceeded Craven's $25,000 offer of settlement, the trial court determined that (1)

Craven was not entitled to costs under section 13–17–202; (2) Novak was not barred from recovering his costs under section 13–17–202; and (3) as the prevailing party, Novak was otherwise entitled to recover his costs under section 13–16–104, C.R.S.2007.

Section 13–16–104 normally allows a plaintiff who prevails at trial to recover costs. However, the supreme court has held that, under the version of section 13–17–202 in effect at the time of trial, a plaintiff who rejects a settlement offer and recovers less at trial was not allowed to recover his or her costs, even if the plaintiff is the prevailing party. *See Bennett v. Hickman,* 992 P.2d 670, 672 (Colo.App.1999)("an additional effect of [§ 13–17–202] is to modify the provisions of § 13–16–104 ... and C.R.C.P. 54(b)"); *see also Centric–Jones Co. v. Hufnagel,* 848 P.2d 942, 947 (Colo.1993) (the court is not permitted to award costs to an offeree if the offer is refused and the subsequent trial judgment obtained is less favorable than the offer, whether the offeree prevails or not).

■ Section 13–17–202 "invokes a special statutory process spelled out in clear and unambiguous language which can and should be enforced without engrafting contract principles onto it." *Centric–Jones Co.,* 848 P.2d at 946.

Under the version of the statute in effect at the time of trial, the party's offer is to be contrasted with the "final judgment." In interpreting a statute, "[w]ords and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly." § 2–4–101, C.R.S.2007.

■ Section 13–17–202 does not define the phrase "final judgment." However, that phrase has acquired a particular meaning under our case law and court rules. Under our case law, a "final judgment" is one which "disposes of the entire litigation on the merits." *Hierath–Prout v. Bradley,* 982 P.2d 329, 330 (Colo.App.1999).

■■ Because prejudgment interest is a form of damages, it is considered to be a part of the "final judgment" on the merits. *See Grand County Custom Homebuilding, LLC v. Bell,* 148 P.3d 398, 401 (Colo.App.2006). A "final judgment" on the merits, however, does not encompass an award of costs. *See* C.R.C.P. 58(a) ("Entry of judgment shall not be delayed for the taxing of costs."); *Hierath–Prout,* 982 P.2d at 330 ("a decision concerning a request for costs does not amend or otherwise affect the finality of the judgment on the merits"); *see also Buchanan v. Stanships, Inc.,* 485 U.S. 265, 268, 108 S.Ct. 1130, 1131–32, 99 L.Ed.2d 289 (1988)(noting that (1) under a rule identical, in pertinent part, to C.R.C.P. 58(a), "[a] sharp distinction [exists] between the judgment on the merits and an award of costs"; (2) a motion for costs "does not involve reconsideration of any aspect of the decision on the merits"; and (3) a motion for costs seeks "only what was due *because of* the judgment").

We construe section 13–17–202, as it existed at the time of trial, consistently with these authorities, that is, ordinarily, a "final judgment" includes prejudgment interest (except to the extent specifically excluded by section 13–17–202(2)) but not costs.

In *Rubio v. Farris,* 51 P.3d 992, 994 (Colo. App.2002), a division of this court recognized that "[i]n determining whether the judgment obtained by plaintiff is greater than the offer of settlement made by defendant, the judgment and offer must be considered in a like manner." There, the division held that, because the settlement offer was for a dollar amount that "included all costs and interest," it had to be compared against a "judgment" figure which also included pre-offer costs and interest. *Id.* at 994–95.

Here, unlike the situation in *Rubio,* Craven's offer did not reference, much less explicitly include, costs, and we perceive no reason why Craven's offer, and, consequently, the "judgment," must be interpreted to include costs. Thus, we conclude that the trial court erred in including Novak's costs as part of the "final judgment."

Not counting Novak's costs ($21,332.95), the pertinent judgment amount would, at most, be $14,311.54, which is less than the $25,000 Craven offered to settle the case. Consequently, under the version of section 13–17–202 in effect at the time of trial, Craven, not Novak, was entitled to an award of

costs, and the court erred in determining otherwise.

### B. *2008 Amendment to Section 13–17–202*

■ We also reject Novak's assertion that he is entitled to relief under the legislative amendment to section 13–17–202(1)(a)(II) that was signed into law by Governor Ritter on February 21, 2008. Under that amendment, if a plaintiff is determined to be the prevailing party in the action, the plaintiff's "final judgment" is to "include the amount of the plaintiff's actual costs that accrued prior to the offer of settlement." *See* Ch. 5, sec. 1, § 13–17–202(1)(a)(II), 2008 Colo. Sess. Law ___ (H.B. 08–1020).

■ "A legislative amendment either clarifies or changes existing law, and we presume that by amending the law the legislature has intended to change it." *City of Colorado Springs v. Powell,* 156 P.3d 461, 465 (Colo.2007). The presumption, however, can be rebutted by showing that the legislature meant only to clarify an ambiguity in the statute. *Id.*

■ Novak relies heavily on a statement that appeared in a summary of the bill, to the effect that the amendment "clarifies" the law. However, the mere invocation of the word "clarify" does not necessarily overcome the presumption that a substantive change in the law operates only prospectively. *Id.* at 466; *see also Martin v. Union Pacific R.R. Co.,* 186 P.3d 61, 67 (Colo.App. 2007) (presumption not overcome, despite statement in bill summary indicating that the amendment "clarifies" the law).

Here, three circumstances combine to persuade us that the 2008 amendment to section 13–17–202(1)(a)(II) effected a change to, rather than merely a clarification of, the law. First, the testimony before the House and Senate Judiciary Committees of the General Assembly reflects that the overriding purpose of the 2008 amendment was to alter the legal precedent established nearly a decade ago in *Bennett v. Hickman,* 992 P.2d at 672, and discussed in section II(A) of this opinion. *See* Hearings on H.B. 08–1020 before the House Jud. Comm., 66th Gen. Assemb., 1st Sess. (Jan. 16, 2008) (remarks of the bill's sponsor, Representative Madden); Hearings on H.B. 08–1020 before the Senate Jud. Comm., 66th Gen. Assemb., 1st Sess. (Jan. 28, 2008) (remarks of the bill's sponsor, Senator Veiga). Second, nowhere does H.B. 08–1020 specify that its modifications or additions are to be applied retroactively. *City of Colorado Springs v. Powell,* 156 P.3d at 466. And, third, section 2 of H.B. 08–1020 expressly provides, "This act shall take effect July 1, 2008, and shall apply to offers of settlements made on or after said date."

Under these circumstances, we conclude that the General Assembly intended that H.B. 08–1020 operate only prospectively, and consequently, that it is inapplicable to the offers made to Novak in this case.

The judgment in favor of Cawthra is affirmed. The order awarding Novak costs and denying Craven costs is reversed, and the case is remanded to the trial court with directions to award Craven her reasonable costs.

Judge VOGT and Judge FURMAN concur.